UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Ronald Eugene Cram,

        Petitioner,

v.

Joan Fabian,
Commissioner of Corrections,

        Respondent.

Civil No. 07-cv-1558 (PJS/JJG)

**REPORT AND RECOMMENDATION**

---

This is a 28 U.S.C. § 2254 habeas action. Petitioner Ronald Eugene Cram ("Cram") alleges that he was unconstitutionally denied effective assistance of counsel, the right to cross-examine certain witnesses, and a post-conviction hearing. For the reasons set forth below, the Court recommends that Cram's petition be denied.

**I.    BACKGROUND**

Cram is a state prisoner at the Minnesota Correctional Facility in Stillwater. On April 22, 2002, after a bench trial, a Ramsey County trial court found Cram guilty of first-degree domestic abuse murder and second-degree intentional murder in connection with his wife's death on December 5, 2001. The trial court acquitted Cram of first-degree premeditated murder. It sentenced Cram to life in prison. The Ramsey County Public Defender's Office represented Cram at trial.[1]

---

[1] Only the facts pertinent to Cram's habeas petition are set forth here. The full factual background regarding Cram's state court conviction is set forth in *State v. Cram*, 718 N.W.2d 898 (Minn. 2006).

### A.     Chronic Fatigue Syndrome Expert

Cram was diagnosed with chronic fatigue syndrome ("CFS") years before his wife's death. (PT 13).[2] On March 20, 2002, before trial, the trial court heard Cram's motion to call a CFS expert. (PT 12). Cram's counsel stated that he did not seek to call a CFS expert to support any contention that Cram could not form the intent to commit the crimes with which he was charged or that he was mentally ill. (PT 13, 15). Rather, he sought to introduce testimony from a CFS expert to present Cram as a "whole person," to explain his intermittent memory loss, and to support a heat of passion defense. (PT 12-15). Cram's counsel stated that the CFS expert would be an infectious disease specialist, not a psychiatrist. (PT 16). At the time of the motion hearing, Cram's counsel had not yet located a CFS expert, although he had tried for three months. *Memo. in support of habeas petition*, Att. 5, p.2. The trial court ruled at the motion hearing that expert testimony regarding CFS was inadmissible. (PT 22). Cram did not appeal this evidentiary ruling.

### B.     Limitations on Witness Cross-Examination

At trial, the prosecution called sixteen witnesses to testify regarding Cram's alleged past pattern of domestic abuse in connection with the domestic abuse murder charge. These witnesses included Cram's brother-in-law, T.C.; and a co-worker of Cram's wife, K.W. The trial court limited Cram's cross-examination of T.C. by disallowing questions regarding T.C's alleged sexual abuse of Cram's wife. (CT 265). It limited Cram's cross-examination of K.W. by precluding questions regarding K.W.'s alleged sexual advances toward Cram and his wife. (CT 376-377; 381-382).

---

[2] The record in this matter consists of pretrial proceedings (designated "PT"), trial proceedings (designated "CT"), restitution proceedings (designated "R"), and the briefs and appendices from Cram's appeal to the Minnesota Supreme Court.

### C. Restitution

On July 30, 2002, the trial court held a hearing on the prosecution's application for a restitution order on behalf of Cram's brother-in-law, mother-in-law, and the Minnesota Crime Victim's Reparations Board. (R 685). Cram's counsel appeared at the hearing. *Id.* On September 23, 2002, the trial court issued an order requiring Cram to pay restitution. *Appellant's direct and post-conviction appeal brief and appendix,* A-12.

### D. Post-Conviction Trial Court Proceedings

On November 15, 2004, Cram filed a petition for post-conviction relief in the state trial court. *Id.* at A-20. Cram alleged that he was denied effective assistance of counsel. *Id.* at A-24. The trial court denied Cram's petition on May 13, 2005. *Id.* at A-13. Cram appealed this denial to the Minnesota Supreme Court on July 15, 2005.

### E. State Court Appeal

On July 17, 2002, Cram filed a direct appeal of his convictions to the Minnesota Supreme Court. He subsequently moved to stay that appeal pending post-conviction proceedings in the trial court, a request the Minnesota Supreme Court granted. On August 3, 2006, after the post-conviction proceedings, the Minnesota Supreme Court issued a consolidated opinion on Cram's direct appeal and his appeal of the denial of post-conviction relief. *State v. Cram*, 718 N.W.2d 898 (Minn. 2006). The appellate court affirmed the trial court.

## II. ANALYSIS

### A. Habeas Legal Standard

A federal court's review of the state court decisions underlying a state prisoner's petition for writ of habeas corpus is "limited and deferential." *Collier v. Norris*, 485 F.3d 415, 421 (8th Cir. 2007) (citation omitted). The Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA") sets forth three circumstances where it is appropriate for a federal court to grant a state prisoner's habeas petition:  1) the state court adjudication was contrary to clearly established federal law; 2) the state court adjudication involved an unreasonable application of clearly established federal law; or 3) the state court adjudication was based on an unreasonable determination of the facts.  28 U.S.C. § 2254(d).[3]

Under circumstance number one, a state court decision is contrary to clearly established federal law if it contains a legal conclusion opposite to that reached by the Supreme Court or if it construes facts "materially indistinguishable" from those found in Supreme Court precedent to arrive at an opposite result from that precedent.  *Davis v. Norris*, 423 F.3d 868, 874 (8th Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)).

Circumstance number two, the state court's unreasonable application of clearly established federal law, is similar to circumstance one.  This situation is triggered where the state court correctly identifies the governing Supreme Court precedent, but unreasonably applies it. *Davis*, 423 F.3d at 874.  To warrant habeas relief, the state court's misapplication of the federal law must have been "objectively unreasonable."  *Collier*, 485 F.3d at 421 (citations omitted).

Circumstance number three, the state court's unreasonable determination of the facts, is subject to the Act's mandate that, "[A] determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

---

[3] The Act states, "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-- (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

### B.     Ineffective Assistance of Counsel

Cram contends that he was denied his Sixth Amendment right to the effective assistance of counsel. *See McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). He argues that his trial counsel was constitutionally ineffective in two ways: 1) by inadequately investigating Cram's medical history and consequently missing a mental illness defense; and 2) by inadequately contesting victim restitution claims. Both are addressed below.

#### 1.     Legal Standard

A habeas petitioner challenging a conviction based on ineffective assistance of counsel must generally show: 1) "that counsel's representation fell below an objective standard of reasonableness;" and 2) a "reasonable probability" that, but for counsel's error, "the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687-688, 694 (1984). *See also Ringo v. Roper*, 472 F.3d 1001, 1003 (8th Cir. 2007). *Cf. U.S. v. Cronic*, 466 U.S. 648, 658-659 (1984) (delineating the types of ineffective assistance of counsel cases where prejudice to the defense is presumed). This analysis is "highly deferential" to counsel's performance. *Strickland*, 466 U.S. at 689. Courts employ a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance…." *Id.*

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 687.

#### 2.     Trial Counsel's Investigation of Cram's Medical History

Cram contends that his trial counsel should have more thoroughly investigated his medical history. He argues that if his counsel had obtained more of his medical records and employed a CFS medical expert to examine him, evidence supporting a mental illness defense or

a lesser manslaughter conviction would have been uncovered. He also argues that counsel should have obtained a continuance to find an appropriate medical expert. In habeas terms, Cram contends that the trial court's factual determination that his counsel thoroughly examined his medical history was clearly erroneous and that both state courts unreasonably applied *Strickland*.

On Cram's petition for post-conviction relief, the trial court concluded that defense counsel's investigation of Cram's medical history fell within the wide range of objectively reasonable representation. It reasoned that defense counsel obtained Cram's medical records dating back ten years and attempted to find and use a CFS expert. It further reasoned that, even if defense counsel had obtained more of Cram's medical records, Cram had not shown a reasonable probability that those records would have changed the result of his trial.

The Minnesota Supreme Court agreed with the trial court that defense counsel's investigation was objectively reasonable. *Cram*, 718 N.W.2d at 909. It too emphasized that defense counsel obtained medical records dating back ten years, and that nothing in those records suggested a mental illness defense. *Id.* It found that the trial court, not defense counsel, terminated the search for a CFS medical expert, because the trial court ruled that expert testimony regarding CFS was inadmissible, an evidentiary ruling Cram did not appeal. *Id.*

The state courts' applications of *Strickland* were not objectively unreasonable. *See Ringo*, 472 F.3d at 1003 (citing *Williams*, 529 U.S. at 411). As both state courts noted, this is not a case where counsel failed to investigate altogether. Rather, the issue is whether he should have done more. Both state courts emphasized that defense counsel obtained Cram's medical files, although not complete, dating back ten years. Those records indicated that Cram suffered from CFS. Defense counsel then tried for approximately three months to obtain a CFS expert. *Memo.*

6

*in support of habeas petition,* Att. 5, p. 2.  He located seven possible CFS experts in Minnesota, none of whom would work on the case.  *Id.*  He also contacted a CFS association in Minnesota seeking additional names.  *Id.*  He then began a national search.  *Id.*  On March 28, 2002, the Court heard the issue of whether a CFS expert could testify, and disallowed any such testimony. (PT-22).

Cram argues that defense counsel should have obtained more medical records, found an expert sooner, and requested a continuance to find an expert at the March 28, 2002 hearing.  But defense counsel obtained ten years of records and tried for months to find the appropriate expert. A request for a continuance to further search for an expert could certainly have appeared futile given the trial court's ruling that such evidence was inadmissible.  The trial court's ruling terminating the CFS line of inquiry differentiates this case from failure to investigate cases based on neglect or strategy.  *Cf. Marcrum v. Luebbers*, 509 F.3d 489, 505 (8th Cir. 2007).[4]

Moreover, even if Cram could overcome the strong presumption that his lawyer's work was proficient, the state court determinations that he did not show prejudice were also reasonable.  The crux of the matter is that Cram's lawyer was investigating Cram's medical history of CFS.  The goal of his investigation was to show Cram as a "whole person," to explain

---

[4] Cram relies on an affidavit from lawyer Joseph Friedberg.  Friedberg states that defense counsel should have retained a CFS expert prior to the March 28, 2002, hearing regarding the admissibility of the expert's testimony.  *Aff. of Joseph S. Friedberg*, *Appellant's direct and postconviction appeal brief and appendix*, A-29.  A more persuasive presentation of the need for this evidence likely could have been made if the substance of the expert's testimony was presented at the hearing.  But, as discussed above, defense counsel made reasonable efforts to locate an expert before the hearing, and could not.  The state court determinations that his efforts passed constitutional muster were not unreasonable.  *See also Ringo*, 472 F.3d at 1006 (holding that "even where a good argument could be made" that counsel should have investigated further, habeas standard requires more). Nor does defense counsel's statement in his affidavit that he felt "compromised" due to his heavy workload change the analysis.  *Aff. of John A. Riemer*, *Memo. in support of habeas petition,* Att. 2.  The state courts reasonably determined that despite his workload, defense counsel adequately investigated the CFS issue, particularly given the trial court's ruling that it would not admit expert CFS testimony.

7

his intermittent memory loss, and to support a heat of passion defense. (PT 13-15). It was *not* to support a mental illness defense. *Id.* As the trial court pointed out, Cram's apparent theory that, if defense counsel had obtained more medical records and an expert a viable mental illness defense would have come to light, is simply too speculative to support an ineffective assistance of counsel claim. The record contains no medical records defense counsel missed suggesting any such defense. In *Rompilla v. Beard*, 545 U.S. 374, 390 (2005), a case Cram cites as supporting his position, the file defense counsel failed to view contained a wealth of mitigation leads.[5] *See also Honeycutt v. Roper*, 426 F.3d 957, 961 (8th Cir. 2005) (no prejudice shown on ineffective assistance of counsel claim where incomplete medical file did not affect forensic psychiatrist's diagnosis of defendant). Here, Cram has identified no such leads defense counsel would have found had he examined more medical records.

In an affidavit Cram submitted in the post-conviction proceedings, Dr. Bernstein, a psychiatrist, opines that Cram suffers from "organic solvent neurotoxicity" due to exposure to chemicals while working in the printing industry. *Appellant's direct and postconviction appeal brief and appendix*, A-34. But, again, the record does not reflect that the additional medical records Cram states trial counsel should have obtained contained any red flags regarding this condition. Nor does it contain any indication that the CFS expert Cram contends his lawyer should have found would have concluded that Cram was misdiagnosed with CFS, instead diagnosed him with organic solvent neurotoxicity, and concluded that he lacked the capacity to

---

[5] The same is true of the inadequate investigations in *Wiggins v. Smith*, 539 U.S. 510, 534 (2003), and *Williams*, 529 U.S. at 395. In *Wiggins*, the record showed that, had defense counsel adequately explored the defendant's social history, substantial mitigation evidence would have been uncovered. 539 U.S. at 534 ("The mitigating evidence counsel failed to discover and present in this case is powerful."). In *Williams*, counsel's inadequate investigation resulted in a failure to find "extensive records graphically describing Williams' nightmarish childhood" and diminished mental capacity. 529 U.S. at 395-396.

8

understand what he was doing.  *See Ringo*, 472 F.3d at 1006 (noting difficulty of showing prejudice where it is unclear what an unretained expert might have opined).

In short, even if Cram's counsel had further investigated Cram's medical history, there is no indication that it would have led to the evidence Cram now urges could have changed the result of his trial.  For these reasons, the Court finds that the state courts' determinations under *Strickland* were reasonable.  Accordingly, the Court recommends that Cram's habeas request on the ground of insufficient trial counsel investigation be denied.

### 3. Restitution Proceedings

Cram also contends that he was denied effective assistance of counsel with respect to the restitution award against him.  He argues that trial counsel was completely absent from the restitution proceedings.  He further contends that this complete absence justifies a presumption of prejudice to the defense under *Cronic*, 466 U.S. at 659.  *See also Freeman v. Graves*, 317 F.3d 898, 900 (8th Cir. 2003); *Fink v. Lockhart*, 823 F.2d 204, 206 (8th Cir. 1987).

The Minnesota Supreme Court's determination that this is not the rare case governed by *Cronic* was reasonable.  Cram's trial counsel was not "totally absent" from Cram's defense or even from the restitution proceedings, as Cram contends.  *See Cronic*, 466 U.S. at 659 n.25.  As the Minnesota Supreme Court correctly observed, Cram's trial counsel appeared at the July 30, 2002, restitution hearing.  (R 685).  He stated that he would be contesting certain aspects of the restitution request.  (R 687).  The trial court, however, determined that it did not have jurisdiction to consider Cram's arguments, because he had not yet filed an affidavit pursuant to Minnesota law governing restitution procedure.  (R 690).  The trial court then held the matter open, requesting that the prosecution file a proposed restitution order.  (R 694).  The prosecution did so, and the Court subsequently ordered restitution.  Defense counsel did not file an affidavit

9

opposing the proposed restitution order or request a hearing. This Court's review of the record indicates that Cram's counsel, and perhaps the trial court, may have been uncertain about the proper procedure for contesting restitution. *See* (R 688).

Defense counsel's failure to file the affidavit or request a hearing does not amount to the total absence of a defense required by *Cronic*. Defense counsel was present throughout Cram's trial and appeared at the restitution hearing. This takes the matter outside the narrow ambit of *Cronic* and dictates its consideration under *Strickland*. *See also Freeman*, 317 F.3d at 900 (application of *Cronic* requires the defendant to "assert counsel failed to oppose the prosecution throughout the proceeding as a whole, rather than at specific points") (citing *Bell v. Cone*, 535 U.S. 685, 697 (2002)); *Malcolm v. Houston*, 518 F.3d 624, 627 (8th Cir. 2008) ("We rarely presume prejudice in ineffective assistance of counsel cases."); *U.S. v. White*, 341 F.3d 673, 679 (8th Cir. 2003) (no prejudice presumed where counsel failed to independently investigate case, called no witnesses, offered no exhibits, requested no jury instructions, and failed to submit a trial brief).

As the Minnesota Supreme Court concluded, Cram made no effort to show that, but for the failings he alleges by trial counsel, the result of the restitution proceeding would have been different. *See Strickland*, 466 U.S. at 694. Rather, he relied solely on his argument that prejudice should be presumed under *Cronic*. Because Cram did not attempt to show prejudice, and the record before the Minnesota Supreme Court did not demonstrate it, the Minnesota Supreme Court did not err in concluding that prejudice was not shown.[6]

---

[6] Although not argued by the Respondent, the Court questions whether 28 U.S.C. § 2254 can be used to raise an ineffective assistance of counsel claim regarding a victim restitution order. The majority of the circuits, including the Eighth, have held that a federal prisoner cannot use 28 U.S.C. § 2255 to challenge the restitution portion of his sentence. *U.S. v. Bernard*, 351 F.3d 360,

### C. Confrontation of Witnesses

Cram also asserts the right to habeas relief based on two trial court evidentiary rulings limiting his cross-examination of his brother-in-law and his wife's co-worker, both of whom testified that Cram's wife had told them that Cram had been physically abusing her.[7] The prosecution offered this evidence, along with similar evidence from other witnesses, to show a past pattern of domestic abuse in connection with the domestic abuse murder charge upon which Cram was ultimately convicted. *See* Minn. Stat. § 609.185(a)(6).

#### 1. Brother-In-Law

Cram contends that the Minnesota Supreme Court misapplied clearly established federal law construing a criminal defendant's Sixth Amendment right to present a complete defense. *See Crane v. Kentucky*, 476 U.S. 683, 690 (1986). He argues that the trial court's ruling precluding him from cross-examining his wife's brother, T.C., regarding T.C.'s alleged sexual abuse of Cram's wife violated his right to present a complete defense. He maintains that he was entitled to such cross-examination to demonstrate T.C.'s bias, specifically that T.C. testified to Cram's history of abusing his wife to deflect attention from his own abuse of his sister.

The Sixth Amendment's confrontation clause guarantees a criminal defendant "the right of effective cross-examination" of witnesses. *Greer v. Minnesota*, 493 F.3d 952, 958 (8th Cir. 2007) (citing *Davis v. Alaska*, 415 U.S. 308 (1974)). Trial judges, however, "retain wide latitude to limit reasonably a criminal defendant's right to cross-examine a witness based on

---

361 (8th Cir. 2003) (collecting cases). The Court sees no reason why Section 2254 would be interpreted differently.

[7] On direct appeal, and in his habeas petition, Cram raised the additional Sixth Amendment confrontation issue that the trial court improperly precluded the testimony of a priest who had counseled the Crams. Cram, however, offers no argument or evidence in support of his position, and appears to have abandoned it altogether. The Court, therefore, finds insufficient grounds for habeas relief based on the trial court's exclusion of the priest's testimony.

concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Guinn v. Kemna*, 489 F.3d 351, 358 (8th Cir. 2007) (citing *Michigan v. Lucas*, 500 U.S. 145, 149 (1991)) (internal quotations omitted). *See also Clark v. Groose*, 16 F.3d 960, 963 (8th Cir. 1994) ("Although the admissibility of evidence at state trial is a matter of state law and ordinarily will not form the basis for federal habeas relief, a federal court may grant habeas relief when a state court's evidentiary ruling infringes upon a specific constitutional protection or is so prejudicial that it amounts to a denial of due process.") (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)) (internal quotations omitted).

The trial court denied Cram's cross-examination of T.C. regarding the alleged sexual abuse based on spousal privilege. The Minnesota Supreme Court held that the trial court erred in applying the spousal privilege,[8] but that the evidence was not relevant in any event. It stated, "[T]he testimony Cram sought to elicit from T.C. was plainly not relevant to the issue of T.C.'s supposed bias. Whether the victim said that her brother touched her inappropriately 35 years before the murder had no bearing on T.C.'s credibility, and the evidence was therefore properly excluded as irrelevant." *Cram*, 718 N.W.2d at 904.

The Minnesota Supreme Court's analysis of this issue was not objectively unreasonable. As the Supreme Court emphasized in *Van Arsdall*, "[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." 475 U.S. at 679 (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (emphasis in original)). Cram does not sufficiently explain

---

[8] The appellate court reasoned that Minnesota's spousal privilege does not apply "to a criminal action or proceeding for a crime committed by one [spouse] against another." 718 N.W.2d at 904 (citing Minn. Stat. § 595.02, subd. 1(a)).

12

how T.C.'s alleged abuse of his sister has any bearing on his credibility with respect to his testimony regarding Cram, and the Court sees no such connection. The Court, therefore, finds no basis for concluding that the Minnesota Supreme Court misapplied federal law. [9]  *See Newton v. Kemna*, 354 F.3d 776, 780-781 (8th Cir. 2004).

### 2.  Co-Worker

Cram also contends that his Sixth Amendment confrontation rights were violated when the trial court denied him the right to cross-examine K.W., a co-worker of Cram's wife. Cram states that he and his wife rebuffed K.W's sexual advances, and that he was entitled to explore her potential bias against him due to his sexual rejection of her.

The Minnesota Supreme Court held that, assuming arguendo that the trial court erred in limiting Cram's cross-examination of K.W., "any error was harmless beyond a reasonable doubt." *Cram*, 718 N.W.2d at 904-905. The court reasoned that, even if K.W.'s bias motivated her to lie about Cram's past abuse of his wife, fifteen other witnesses testified to such abuse. *Id.* at 905. It also noted that Cram, himself, "admitted to police that he beat his wife prior to the night of the murder." *Id.* Thus, the Court concluded that any error in limiting K.W.'s testimony was harmless.

In *Fry v. Pliler*, -- U.S. --, 127 S.Ct. 2321, 2328 (2007), the Supreme Court held that, in a § 2254 habeas proceeding, the court must assess the prejudicial impact of a constitutional error under the harmless error test specified in *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). The *Brecht* test is "whether the error had substantial and injurious effect or influence in determining the jury's verdict." 507 U.S. at 637. This standard is "less onerous" than the "harmless beyond a

---

[9] Cram asserts that the Minnesota Supreme Court had no basis to conclude that the evidence he was trying to offer at trial concerned alleged inappropriate touching that had occurred many years earlier. The record, however, reflects otherwise. (R 256).

reasonable doubt" test applied by the state court on direct review, and requires a showing of "actual prejudice." *Id.*

In *Toua Hong Chang v. Minnesota*, 521 F.3d 828 (8th Cir. 2008), the Eighth Circuit Court of Appeals recently applied the *Brecht* standard in a Sixth Amendment confrontation clause case. In *Chang*, the defendant was convicted of sexual assault and promoting prostitution. Out-of-court statements from one of the alleged victims of the assaults were admitted at trial, and later became the subject of Chang's habeas petition. Affirming the denial of Chang's habeas petition, the court held that the admission of the statements did not constitute *Brecht* error. The court noted that *Brecht* error occurs only when "the court finds itself in grave doubt about the effect of the error on the jury's verdict." *Id.* at 832. The court found no such grave doubt due to the "plethora of evidence" supporting Chang's conviction. *Id.*

Similarly, here the Court does not find itself in "grave doubt" regarding the effect of any constitutional error on Cram's conviction. As the Minnesota Supreme Court noted, fifteen other witnesses, and Cram himself, testified regarding a past pattern of abuse.[10] Cram does not contest this. As in *Chang*, K.W.'s testimony "added nothing to the prosecution's case" that was not already there. *Id.* at 933. *See also Van Arsdall*, 475 U.S. at 684 (factors relevant to harmless error analysis "include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination

---

[10] The witnesses included four of Cram's wife's co-workers, her ophthalmologist, two neighbors, and two police officers, as well as family members.

otherwise permitted, and, of course, the overall strength of the prosecution's case"). Under these circumstances, habeas relief is unwarranted.[11]

### D. Post-Conviction Relief Hearing

Cram contends that he was denied "due process of law and fundamental fairness" by the trial court's decision to deny him an evidentiary hearing on his post-conviction petition alleging ineffective assistance of counsel. Specifically, Cram takes issue with the following conclusion of law contained in the trial court's order dismissing his post-conviction petition:

> An evidentiary hearing is not required unless facts are alleged which, if proved, would entitle a petitioner to the requested relief. Minn. Stat. § 590.04, subd. 1; *Russell v. State*, 562 N.W.2d 670 (Minn. 1997) (citing *Fratzke v. State*, 450 N.W.2d 101, 102 (Minn. 1990) (citing *State ex rel Roy v. Tahash*, 227 Minn. 238, 152 N.W.2d 301, 306 (1967)). A petitioner must prove these facts by a fair preponderance of the evidence. Minn. Stat. § 590.04, subd. 3 (1996); *see also State v. Rainer*, 502 N.W.2d 784, 787 (Minn. 1983). In this case, the petition, files, and record conclusively show that Petitioner has not met the threshold fair preponderance of evidence and therefore is not entitled to an evidentiary hearing.

*Memo. in support of habeas petition*, Att. 1 at 6.

Cram argues that this passage reflects that the trial judge improperly required him to prove his post-conviction claims before he could obtain an evidentiary hearing on those claims. He thus asserts that he was denied due process and fundamental fairness in the post-conviction proceedings.

The trial judge did not require Cram to prove his claims before he could have a hearing. Rather, the judge simply cited the standard of Minnesota law governing post-conviction proceedings. Under Minn. Stat. § 590.04, subd. 1, the trial court must set a hearing on the petition, "unless the petition and the files and records of the proceeding conclusively show that

---

[11] The Court does not conduct a separate analysis under the AEDPA, "because the *Brecht* analysis 'obviously subsumes the [AEDPA test].'" *Chang*, 521 F.3d at 832 (quoting *Fry*, 127 S.Ct. at 2327)). The Court also does not analyze whether Sixth Amendment error occurred in the first instance, as any error lacked the impact required for habeas relief. *Chang*, 521 F.3d at 832.

the petitioner is entitled to no relief."    Here, after extensively reviewing and discussing Cram's post-conviction assertions regarding ineffective assistance of counsel, the trial court determined that an evidentiary hearing was unwarranted under Minnesota law.  The Minnesota Supreme Court agreed, finding that "the record conclusively shows that Cram is not entitled to relief on his claim for ineffective assistance of counsel."  *Cram*, 718 N.W.2d at 908.

This Court finds no federal issue underlying Cram's argument, much less an error of habeas proportions.  Cram cites due process and fundamental fairness, but discusses no case or even a theory supporting his argument that the trial court's application of the Minnesota post-conviction relief statute implicates those concerns.[12]  His request for habeas relief based on the lack of a state court evidentiary hearing should, therefore, be denied.

### III.  CONCLUSION

In sum, the Court recommends denial of Cram's petition.   Cram's trial counsel reasonably investigated his medical history, and Cram has not shown that further investigation would have made sufficient difference.  Furthermore, Cram's trial counsel was not totally absent from his defense, including the restitution proceedings.  The trial court's limits on Cram's cross-examination of two witnesses pass habeas muster.  Trial courts retain significant latitude to limit cross-examination, and the limiting of cross-examination was harmless in any event.  Finally, the trial court's decision to forego an evidentiary hearing on Cram's post-conviction petition was not habeas error.

---

[12] Cram does cite *Lambright v. Stewart*, 241 F.3d 1201 (9th Cir. 2001), in which the court held that a habeas petitioner was entitled to an evidentiary hearing in federal court on his ineffective assistance of counsel claim.  That case, however, had nothing to do with the denial of such a hearing in state court.  Furthermore, in that case, unlike in this one, the court found that the petitioner had stated a colorable ineffective assistance claim.  Cram has not.

## IV.  RECOMMENDATION

Being duly advised of all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

A. Ronald Eugene Cram's petition for writ of habeas corpus under 28 U.S.C. § 2254 (Doc. No. 1) be **DENIED**;

B. This action be **DISMISSED WITH PREJUDICE**.

Dated:  August 7, 2008.

 s/ *Jeanne J. Graham*
JEANNE J. GRAHAM
United States Magistrate Judge

### NOTICE

Pursuant to Local Rule 72.2(b), any party may object to this report and recommendation by filing and serving specific, written objections by **August 21, 2008**.  A party may respond to the objections within ten days after service.  Any objections or responses filed under this rule shall not exceed 3,500 words.  The District Court shall make a de novo determination of those portions to which objection is made.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the United States Court of Appeals for the Eighth Circuit.